**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH WOOD, individually and on behalf of all other persons similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MYPILLOW, INC., | |
| Defendant. | |

1     Plaintiff Elizabeth Wood ("Plaintiff") brings this action individually and on behalf of all

2  others similarly situated against Defendant MyPillow, Inc. ("Defendant" or "MyPillow").  Plaintiff

3  makes the following allegations pursuant to the investigation of her counsel and based upon

4  information and belief, except as to the allegations specifically pertaining to herself, which are

5  based on personal knowledge.

6                          **NATURE OF THE ACTION**

7     1.     Consumers actively seek out bargains and discounted items when making

8  purchasing decisions.  Retailers, including Defendant, are well aware of consumers' susceptibility

9  to such perceived bargains.  Products perceived by consumers to be discounted, however, are not

10  always actual bargains.  In an effort to give off the appearance of a bargain, Defendant

11  intentionally misleads consumers as to the quality and value of the bedding products, including

12  pillows (the "Products"), through its deceptive sales tactics.

13     2.     When consumers visit MyPillow.com (the "Website"), they are shown purported

14  "sale" and "discounted" prices on Defendant's Products, including its "Classic MyPillow."

15     3.     During the browsing process, and prior to making a purchase, consumers are

16  presented with reference prices for the Products on sale.  For example, consumers are told that the

17  Classic Bed MyPillows, normally priced at $49.98, are on a "discount" for $17.98 with a

18  promotional code.  *See* Figure 1.



*Figure 1*

4.       But Defendant's purported "sales" are, in reality, anything but.  The substantial "discount" shown to consumers is deceptive and misleading because Defendant's Products are never sold at the full price represented.  Such findings were confirmed through online archives documenting Defendant's pricing and sale history.  Additionally, Defendant has configured its Website in such a manner that *a promotional code is trivially available to all consumers*, rendering its "promotional code" pricing deal illusory.

5.       It is well established that false reference pricing violates state and federal law.  Nonetheless, Defendant employs inflated, fictitious reference prices for the sole purpose of increasing its sales.  Defendant engages in this deceptive practice to deceive consumers, including Plaintiff, into believing they are receiving a bargain on their purchases to induce them into making a purchase they otherwise would not have made.

6.       Separate and apart from these illusory "discounts," Defendant has violated California's prohibition on "drip pricing" by charging a mandatory "Shipping Protection" fee at checkout which is undisclosed in Defendant's initial advertising of its products.  This, too, is in violation of California law.

7.       Namely, advertising products at a price that does not include all mandatory fees, with the exception of taxes imposed by the government, and shipping costs incurred in shipping a product to a consumer, violates California's consumer protection laws, including the Consumers Legal Remedies Act pursuant to Cal. Civ. Code § 1770(a)(29)(A) (the "Honest Pricing Law"), among other statutes.  Here, a so-called "Shipping Protection" fee is not shipping costs and must be included in the price shown to consumers as they browse for items.

8.       As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiff and members of the Class, as defined herein, were induced into purchasing the Products under the false premise that they were of a higher grade, quality, or value than they actually were.  Additionally, Defendant has caused Plaintiff and members of the Class to (1) bear mandatory expenses and costs they otherwise should not have had to bear, (2) be misled as to the actual price of the products, and (3) be subjected to bait and switch "drip pricing."

1    9.    For the foregoing reasons, Plaintiff seeks relief in this action individually, and on

2    behalf of all purchasers of the Products for violations of the California Consumers Legal Remedies

3    Act ("CLRA"), Civil Code §§ 1750, *et seq.*; Unfair Competition Law ("UCL"), Bus. & Prof. Code

4    §§ 17200, *et seq.*; False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*; fraud; and

5    unjust enrichment.  Through this action, Plaintiff seeks to enjoin Defendant from its false and

6    deceptive sales practices, and Plaintiff seeks to obtain actual and statutory damages, restitution,

7    injunctive relief, and reasonable attorneys' costs and fees.

8                                    **PARTIES**

9    10.    Plaintiff Elizabeth Wood is an individual consumer who, at all times material

10   hereto, was a citizen of California and resident of Napa, California.

11   11.    Defendant MyPillow, Inc. is a Minnesota Corporation with a principal place of

12   business located at 1550 Audubon Road, Chaska, MN 55318.  Defendant manufactures, markets,

13   advertises, and distributes its Products throughout the United States, including California.

14   Defendant manufactured, marketed, and sold the Products during the relevant Class Period.  The

15   planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business

16   operations concerning the Products were primarily or exclusively carried out by Defendant.

17                          **JURISDICTION AND VENUE**

18   12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as

19   amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action

20   where there are more than 100 members and the aggregate amount in controversy exceeds

21   $5,000,000.00, exclusive of interest, fees, and costs, and at least some members of the proposed

22   Classes are a citizens of a state different from Defendant.

23   13.    This Court has specific personal jurisdiction over Defendant because Plaintiff's

24   injuries and damages alleged herein arise from or relate to Defendant's marketing and sale of the

25   products at issue, and its delivery of such products, to consumers in California, including Plaintiff.

26   In addition, Defendant has purposefully availed itself of the laws and benefits of doing business in

27   California, and its actions have deliberately targeted the Plaintiff and other California consumers,

28   as it markets, sells, and ships its products to consumers in California.  Further, Plaintiff ordered the

---

1  unlawfully marketed products from Defendant's Website while in California, and Defendant

2  delivered such products to Plaintiff in California.

3      14.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because

4  a substantial part of the events giving rise to the claims occurred in this District, given that Plaintiff

5  was located in this District when she purchased the Products from the Website and relied on

6  Defendant's misrepresentations and paid the unlawful Fee at issue.

7                          **FACTUAL BACKGROUND**

8      15.    Defendant manufactures, markets, sells, and distributes its Products throughout the

9  United States, including California, through its Website, an online e-commerce store.

10  ***State And Federal Pricing Guidelines***

11      16.    California provides clear guidelines as to permissible and unlawful sales tactics:

12          For the purpose of this article the worth or value of any thing
            advertised is the prevailing market price, wholesale if the offer is at
13          wholesale, retail if the offer is at retail, at the time of publication of
            such advertisement in the locality wherein the advertisement is
14          published.

15          No price shall be advertised as a former price of any advertised thing,
            unless the alleged former price was the prevailing market price as
16          above defined within three months next immediately preceding the
            publication of the advertisement or unless the date when the alleged
17          former price did prevail is clearly, exactly and conspicuously stated
            in the advertisement.

18  Bus. & Prof. Code § 17501.

19      17.    Additionally, California law expressly prohibits making false or misleading

20  statements of fact "concerning reasons for, existence of, or amounts of price reductions." *See* Cal.

21  Civ. Code § 1770(a)(13).

22      18.    The Federal Trade Commission ("FTC") provides retailers with additional guidance

23  as to permissible and unlawful sales tactics. *See* 16 C.F.R. § 233.

24      19.    The FTC provides the following guidance on former price comparisons:

25          One of the most commonly used forms of bargain advertising is to
            offer a reduction from the advertiser's own former price for an
26          article. If the former price is the actual, bona fide price at which the
            article was offered to the public on a regular basis for a reasonably
27          substantial period of time, it provides a legitimate basis for the
            advertising of a price comparison. … **If, on the other hand, the**
28          **former price being advertised is not bona fide but fictitious—for**

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    4

**example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

20.     The FTC further provides that "[t]he advertiser should be especially careful … that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**."  16 CFR § 233.1(b) (emphasis added).

21.     The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.**  Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area—that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

22.     Essentially, federal and state law provides that sales practices should be offered in good-faith and accurately reflect the price at which comparable products are sold in the market.

### *California's Honest Pricing Law*

23.     On July 1, 2024, the California Legislature amended the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, making it illegal "for most businesses to advertise or list a price for a good or service that does not include all required fees or charges."[1]

24.     This amendment to the CLRA was made to rein in "drip pricing" by "bring[ing] price transparency to all sectors of the state's economy."  California Bill Analysis, S.B. 478

---

[1] State of California Department of Justice, *SB 478 Hidden Fees*, https://oag.ca.gov/hiddenfees.

Assem., 7/11/2023.  Drip pricing "is a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process."[2]

25.    In particular, the amendment was a response to the issue of when "a seller uses an artificially low headline price to attract a customer and usually either discloses additional required fees in smaller print, or reveals additional charges later in the buying process."[3]  The authors of the amendment emphasized that "[h]iding required fees is nothing more than a deceptive way of hiding the true price of a good or service.  Transparency and full disclosure in pricing are crucial for fair competition and consumer protection."[4]

26.    Drip pricing is particularly harmful to consumers because "[w]hen merchants include hidden or 'junk fees' in the purchase price of goods and services after putting out a much lower advertised price (the bait), consumers are often misled and kept from properly assessing the best prices, thereby hindering the market, especially online."  California Bill Analysis, S.B. 1524 Sen., 6/25/2024.

27.    Thus, California's Honest Pricing Law benefits consumers by enabling them to conduct "direct, apples-to-apples price comparison" between different vendors so that they may make "informed purchasing decisions based on their preferences and budgets."[5]  It also ensures businesses engage in fair competition by competing based on the "price and value offered, rather than on their ability to deceive consumers into paying junk fees."[6]

28.    Relying on the drip pricing practice, websites like Defendant's can effectively squeeze every last penny from a consumer's wallet.  This is because "a shopper may have put so much time into the shopping process that by the time additional fees or charges are disclosed they have already made up their minds to make a purchase."[7]

---

[2] *See* Federal Trade Commission, *The Economics of Drip Pricing* (May 21, 2012), https://www.ftc.gov/news-events/events/2012/05/economics-drip-pricing.

[3] State of California Department of Justice, *SB 478 Hidden Fees*, *supra.*

[4] *Id.*

[5] State of California Department of Justice, *SB 478 Hidden Fees*, *supra.*

[6] *Id.*

[7] Investopedia, *Drip Pricing: What It Means, How It Works* (Jan. 24, 2023), https://www.investopedia.com/terms/d/drip-pricing.asp.

29.     Indeed, "[c]ompanies may utilize a price dipping approach in order to entice a customer into starting the purchase process, at which point the customer may not want to restart his or her search, once they find out the added costs."[8]

30.     Defendant's checkout process does exactly that.  Defendant's checkout process allows it to slip the additional mandatory Fee into the final costs to be paid, presenting the Fee for the first time once a consumer goes into their shopping cart.

### Defendant's Deceptive Sales Practices

31.     In an effort to increase sales, Defendant engages in a pervasive marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted "sale" price.  Defendant is aware that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a products quality or value is difficult to discern.[9]

32.     Defendant's flagship product is its "MyPillow."  Instead of making the price for its MyPillow transparent, Defendant deceives customers in a variety of ways into believing they are receiving a bargain.  When a customer first visits the Website, they encounter a banner advertising a "Sale" on the Classic MyPillow.  *See* Figure 2 (red marking added for emphasis).



***Figure 2***

---

[8] *Id.*

[9] *Information and Consumer Behavior*, Phillip Nelson, Journal of Political Economy 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

---

33.    Defendant advertises in multiple places on its Website that this sale can be accessed with a promotional code, which Defendant referes to as a "Promo Code."  However, this Promo Code is given to *any customer who requests it*.  And this Promo Code is not exclusive or hidden in any way.  In fact, there is a hyperlink that, when clicked, Defendant will simply provide a Promo Code to literally any consumer seeking it.

34.    Specifically, all the customer has to do is click a hyperlink when they navigate to their cart.  *See* Figure 3 (red marking added for emphasis).  Right under the redemption option for a Promo Code is the text: "Need help finding your Promo Code?  <u>Click here!</u>"  The "<u>Click here!</u>" language is a hyperlink, which directs consumers to a landing page where they are asked to state where they learned about MyPillow.  *See* Figure 4, next page.  Once they do this, they are given a promo code that they can use to access the sale price.



***Figure 3***



*Figure 4*

35.    In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

36.    Defendant **never** sells its Products at the advertised strike-through price.  Such findings were confirmed through online archives documenting Defendant's pricing and sale history.

37.    Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiff's purchases.

38.    Plaintiff was harmed as a direct and proximate result of Defendant's acts and omissions.

39.    Defendant commits the same unfair and deceptive sales practices for all of its Products.

40.    Plaintiff and members of the Class are not receiving the bargain or value that Defendant has misled them to believe.

***Defendant's Hidden Fees***

41.    Defendant shows each item's purchase price upfront when it first appears on the Website, first in a banner advertisement (*See* Figure 5, next page, red marking added for emphasis), and then on the "Classic Collection" products page (*See* Figure 6, next page).





*Figure 5*



*Figure 6*

42.     When a user selects an item, the price is again displayed on the page. *See* Figure 7, "As Low As $17.98 w/ promo code."



*Figure 7*

43.     When an item is added to a customer's cart and a promo code is applied, the price of $17.98 is again displayed.  *See* Figure 8.



*Figure 8*

44.     However, upon checkout, a mandatory and additional hidden "Shipping Protection" fee (the "Fee") of $2.95 is added to the total.  *See* Figure 9.  This "Shipping Protection" fee is *separate and apart from actual shipping charges, which are applied separately.*



**Figure 9**

45.     However, by the time Defendant discloses this Fee, consumers have already spent their time carefully reviewing and selecting the items they wish to purchase.  In doing so, users rely on Defendant's previously advertised prices.  Thus, Defendant's omission of the mandatory Fee until the very end of the process is an unfair practice designed to string consumers along with the false impression of lower prices and prevent consumers from being able to make an accurate comparison between Defendant's prices and its competitors' prices.

46.     Moreover, Defendant's failure to disclose its mandatory Fee on its Website until a customer reaches their cart directly violates the CLRA pursuant to Cal. Civ. Code § 1770(a)(29)(A) (the "Honest Pricing Law"), which prohibits Defendant from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than" government-imposed taxes or fees and *bona fide* postage or [stand-alone] shipping charges.  Cal.

1    Civ. Code § 1770(a)(29)(A).  Defendant's Fee is neither a government-imposed fee nor a stand-

2    alone fee for postage and shipping.  As such, Defendant is obligated to disclose this Fee along with

3    the initial advertised price.  It is not enough for Defendant to do so once consumers reach their

4    checkout carts.  But that is exactly what Defendant does.  At no point prior to the end of the

5    checkout process does Defendant disclose the mandatory Fee.  Instead, it nickels-and-dimes its

6    consumers one hidden fee at a time.  Thus, Defendant's dishonest drip pricing scheme is a direct

7    violation of the CLRA's Honest Pricing Law.

8    ***Plaintiff's Experience***

9        47.    On October 25, 2024, Plaintiff made a purchase on Defendant's Website.  The

10    advertised price of the item she purchased was $69.98, with the "sale" price advertised as $18.88.

11    When browsing and selecting which item to buy, Plaintiff relied on Defendant's advertised prices

12    to decide whether to purchase that item or not.  However, once Plaintiff went to checkout, a

13    "Shipping Protection" fee of $2.95 was added to her transaction.  *See* Figure 10, next page.  This

14    Fee was not included in the original price of the items advertised on Defendant's Website.  Thus,

15    ultimately, Plaintiff paid the advertised price of the item she had selected, but also had to pay the

16    mandatory Fee at checkout—despite the fact that Defendant waited until the last moment to reveal

17    the mandatory Fee, in violation of the CLRA's Honest Pricing Law and other California consumer

18    protection statutes.

48.     As such, Plaintiff was deceived into thinking that her purchase would cost only the sum of the advertised prices for the items she had selected to buy (plus any government-imposed taxes, to be determined at a fixed rate).



***Figure 10***

49.     Plaintiff's experience is not an isolated incident.  Defendant uniformly fails to include the Fee in the prices it advertises on its Website prior to the checkout page.  Thus, the facts giving rise to Plaintiff's claims are materially the same as the Class she seeks to represent.  In all cases, the Fee makes it difficult for consumers to compare prices offered by different websites and consistently results in consumers spending considerably more than they would otherwise.

50.     Moreover, when Plaintiff purchased the Product for the "sale" price of $18.88, Plaintiff reviewed the accompanying labels, disclosures, warranties, and marketing materials on Defendant's Website and understood them as representations and warranties by Defendant that the Product was ordinarily offered at a higher price ($69.98, the strike-through reference price for this item). These representations included a higher strike-through reference price, the advertised "sale" price, and the use of a "Promo Code" to receive the "sale" price.

51.     Plaintiff relied on Defendant's false, misleading, and deceptive representations and warranties about the Product in making her decision to purchase the Product. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product, or would not have paid as much for the Product, had she known Defendant's representations were not true. Defendant's representations about its Products are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.

## CLASS ALLEGATIONS

52.     **Class Definition:** Plaintiff brings this action on behalf of herself and all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3). The proposed class Plaintiff seeks to represent is defined as follows:

> All consumers who purchased the Products during the applicable statute of limitations period (the "Class Period") in California (the "Class").

53.     Specifically excluded from the Class are: (1) Defendant and its officers, directors, employees, principals, affiliated entities, controlling entities, and other affiliates; (2) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (3) the Judge(s) assigned to this case and any members of their immediate families.

54.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

55.    **Numerosity.** Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

56.    **Commonality and Predominance.** The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      (a)    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

      (b)    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

      (c)    Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public;

      (d)    Whether Plaintiff and the Class are entitled to injunctive relief; and

      (e)    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

57.    **Typicality.** Plaintiff is a member of the Class she seeks to represent.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

58.    **Adequacy.** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to represent; her consumer fraud claims are common to all other members of the Class and she has a strong interest in vindicating their rights; she has retained counsel competent and experienced in complex class action litigation and she intends to vigorously prosecute this action.  Plaintiff has no interests which conflicts with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.  Defendant has acted in a manner generally applicable to the Class, making relief

1    appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions

2    by individual Class Members would create a risk of inconsistent and varying adjudications.

3    59.    **Superiority.**  Further, a class action is superior to any other available method for the

4    fair and efficient adjudication of this controversy since individual joinder of all Class members is

5    impracticable.  Additionally, the expense and burden of individual litigation would make it difficult

6    or impossible for the individual Class members to redress the wrongs done to them, especially

7    given the costs and risks of litigation as compared to the benefits that may be attained.  Even if the

8    Class members could afford individualized litigation, the cost to the court system would be

9    substantial and individual actions would also present the potential for inconsistent or contradictory

10   judgments.  By contrast, a class action presents fewer management difficulties and provides the

11   benefit of single adjudication and comprehensive supervision by a single forum.

12   60.    Finally, Defendant has acted or refused to act on grounds generally applicable to the

13   entire Class, thereby making it appropriate for this Court to grant final injunctive relief and

14   declaratory relief with respect to the Class as a whole.

15   61.    Without a class action, Defendant will continue a course of action that will result in

16   further injury to Plaintiff and members of the Class, and will likely retain the benefits of its

17   wrongdoing.

18   62.    Based on the foregoing allegations, Plaintiff's claims for relief include those set

19   forth below.

20
21   <u>**COUNT I**</u>
     **Violation of California's Consumers Legal Remedies Act ("CLRA")**
     **Civil Code §§ 1750, _et seq._**

22
23   63.    Plaintiff and Class Members reallege and incorporate by reference each allegation
     set forth above as if fully set forth herein.

24   64.    Plaintiff brings this claim individually and on behalf of members of the Class
25   against Defendant.

26   65.    This cause of action is brought pursuant to California's Consumers Legal Remedies

27   Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

28

---

66.     Plaintiff and members of the Class are consumers who purchased Defendant's Products for personal, family, or household purposes.  Accordingly, Plaintiff and members of the Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

67.     At all relevant times, Defendant's Products constituted "goods," as that term is defined in Cal. Civ. Code § 1761 (a).

68.     At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(e).

69.     At all relevant times, Plaintiff's purchases of Defendant's Products, and the purchases of other Class members, constituted "transactions," as that term is defined in Cal. Civ. Code § 1761 (e).

70.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

71.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiff and the Class.  Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

72.     Defendant advertised goods or services with intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9).

73.     Defendant made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of California Civil Code § 1770(a)(13).

74.     Defendant violated California Civil Code §§ 1770(a)(9) and (a)(13) by representing that its Products were "on sale" and displaying a strikethrough reference price.

75.     Plaintiff and members of the Class suffered injuries caused by Defendant's misrepresentations because (a) Plaintiff and members of the Class would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and members of the Class paid a price premium due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level of quality or value as promised.

76. Additionally, Cal. Civ. Code § 1770(a)(29)(A) prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) [t]axes or fees imposed by a government on the transaction [or] (ii) [p]ostage or carrier charges that will be reasonably or actually incurred to ship the physical good to the consumer."

77. As alleged, Defendant advertises and displays the price for purchasing its items without disclosing the mandatory Fee until checkout.

78. The Fee is mandatory because a consumer is not able to purchase the item without paying that Fee.

79. By committing the acts and practices alleged herein, Defendant has violated the CLRA's Honest Price Law pursuant to Cal. Civ. Code § 1770(a)(29)(A).

80. Plaintiff and Class Members were injured by Defendant's drip-pricing scheme because they reasonably relied on Defendant's advertised price for the items they purchased. Further, Plaintiff and Class Members were not reasonably made aware that they were required to pay a "Shipping Protection" fee at the first instance when Defendant advertised the purchase prices, but instead, this information was only provided to consumers by Defendant at the very end of the purchase process. As a result, Plaintiff and the Class paid prices for the items they purchased that did not conform to the initial advertised purchase price and thus suffered an injury under this statute. As such, Plaintiff and the Class spent money on goods or services that they would not have paid for, or would have paid for on different terms, had they known the true costs of the items they purchased from the beginning of and throughout the process of viewing and selecting such items from Defendant's store.

81. On or around November 26, 2025, a CLRA notice letter was sent to Defendant that complied in all respects with California Civil Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA with respect to the hidden Fee and the false reference pricing, and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter, which was delivered to and received by Defendant on December 1, 2025, stated that it was sent on behalf

of all other similarly situated individuals, such as Plaintiff. Defendant failed to remedy the issues raised in the notice letter. Accordingly, Plaintiff seeks damages from Defendant for Defendant's violations of the CLRA.

82.     Further, injunctive relief is appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the price of the items offered for sale on its website, in compliance with the CLRA's Honest Pricing Law, and to cease from advertising its products with false reference prices, so that Plaintiff and Class members can reasonably rely on Defendant's representations as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

83.     Accordingly, pursuant to Civ. Code § 1780, Plaintiff and the Class seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendant from continuing its violative practices, (c) restitution of all money and property lost by Plaintiff and the Class as a result of Defendant's unlawful conduct; (d) punitive damages; (e) any other relief that the Court deems proper; and (f) Plaintiff's and the Class' attorneys' costs and fees.

<u>COUNT II</u>
**Violation of California's False Advertising Law ("FAL")**
**Business & Professions Code §§ 17500, *et seq.***

84.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

85.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

86.     California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

87.     California's FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price …

within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." *See* Cal. Bus. & Prof. Code § 17501.

88.    Defendant violated California's FAL by representing that its Products were "on sale," representing that consumers were receiving a discount through the use of a promo code, and displaying a strikethrough reference price. Defendant never offered the Products at the advertised strike-through price. Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

89.    Additionally, Defendant has violated the FAL by falsely advertising that its Products were being sold at a certain price while charging a mandatory, hidden Fee at checkout. This practice deceives consumers and prevents them from making meaningful comparisons between Defendant's prices and Defendant's competitors' prices given that Defendant is not transparent about the full cost of its items. Defendant's practice is likewise deceitful because it causes users to expect to pay a certain, lower price for a purchase, only to later find a higher price is owed at the very last step of the purchase process.

90.    Defendant's actions in violation of § 17500 were false and misleading such that the general public was likely to be deceived.

91.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality or value.

92.    Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers. Plaintiff and members of the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies

1  paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by

2  law; and (d) the payment of Plaintiff's attorneys' fees and costs.

3                              **COUNT III**
                   **Violation of California's Unfair Competition Law**
4                **Business & Professions Code §§ 17200, *et seq.***

5         93.    Plaintiff and Class Members reallege and incorporate by reference each allegation

6  set forth above as if fully set forth herein.

7         94.    Plaintiff brings this claim individually and on behalf of the members of the Class

8  against Defendant.

9         95.    Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.*  The UCL

10  provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or

11  fraudulent business practices and unfair, deceptive, untrue or misleading advertising … ."  The

12  UCL also provides for injunctive relief and restitution for violations.

13        96.    "By proscribing any unlawful business practice, § 17200 borrows violations of other

14  laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-*

15  *Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999)

16  (citations and internal quotation marks omitted).

17        97.    Virtually any law or regulation—federal or state, statutory, or common law—can

18  serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App.

19  4th 1342, 1383 (2012).

20        98.    Defendant has violated the UCL's "unlawful prong" as a result of its violations of

21  the CLRA, FAL, and federal regulations as described herein.

22        99.    Throughout the Class Period, Defendant committed acts of unfair competition, as

23  defined by § 17200, by representing that its Products were "on sale" and that consumers were

24  receiving a "discount," and displaying a strikethrough reference price.  Defendant never sold its

25  Products at the advertised strikethrough price.  Such a deceptive marketing practice misled

26  consumers by creating a false impression that the Products were of a higher value and worth more

27  than their actual worth.

28

1    100.    As detailed above, the CLRA prohibits a business from "[a]dvertising goods or

2    services with intent to not sell them as advertised."  Cal. Civ. Code § 1770(a)(9).

3    101.    Further, the CLRA prohibits a business from "[m]aking false or misleading

4    statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ.

5    Code § 1770(a)(13).

6    102.    California law also expressly prohibits false reference price schemes.  Specifically,

7    the FAL provides:

8          For the purpose of this article the worth or value of any thing
           advertised is the prevailing market price, wholesale if the offer is at
9          wholesale, retail if the offer is at retail, at the time of publication of
           such advertisement in the locality wherein the advertisement is
10         published.

11         No price shall be advertised as a former price of any advertised thing,
           unless the alleged former price was the prevailing market price as
12         above defined within three months next immediately preceding the
           publication of the advertisement or unless the date when the alleged
13         former price did prevail is clearly, exactly and conspicuously stated
           in the advertisement.

14   Bus. & Prof. Code § 17501.

15   103.    Federal regulations also provide:

16         One of the most commonly used forms of bargain advertising is to
17         offer a reduction from the advertiser's own former price for an
           article.  If the former price is the actual, bona fide price at which the
18         article was offered to the public on a regular basis for a reasonably
           substantial period of time, it provides a legitimate basis for the
19         advertising of a price comparison.  Where the former price is
           genuine, the bargain being advertised is a true one.  **If, on the other
20         hand, the former price being advertised is not bona fide but
           fictitious - for example, where an artificial, inflated price was
21         established for the purpose of enabling the subsequent offer of a
           large reduction—the "bargain" being advertised is a false one;
22         the purchaser is not receiving the unusual value he expects.  In
           such a case, the "reduced" price is, in reality, probably just the
23         seller's regular price.**

24   16 C.F.R. § 233.1(a) (emphasis added).

25   104.    The FTC further provides that "[t]he advertiser should be especially careful [...] that

26   the price is one at which the product was openly and actively offered for sale, for a reasonably

27   substantial period of time, in the recent, regular course of his business, **honestly and in good faith**

28

1      **- and, of course, not for the purpose of establishing a fictitious higher price on which a**

2      **deceptive comparison might be based**." 16 C.F.R. § 233.1(b) (emphasis added).

3              105.    The FTC also provides retailers with guidance as to retail price comparison:

4                      Another commonly used form of bargain advertising is to offer goods
                        at prices lower than those being charged by others for the same
5                      merchandise in the advertiser's trade area (the area in which he does
                        business).  This may be done either on a temporary or a permanent
6                      basis, but in either case **the advertised higher price must be based
                        upon fact, and not be fictitious or misleading.**  Whenever an
7                      advertiser represents that he is selling below the prices being charged
                        in his area for a particular article, he should be reasonably certain
8                      that the higher price he advertises does not appreciably exceed the
                        price at which substantial sales of the article are being made in the
9                      area—that is, a sufficient number of sales so that a consumer would
                        consider a reduction from the price to represent a genuine bargain or
10                     saving.

11     16 C.F.R. § 233.2(a) (emphasis added).

12             106.    As described herein, the alleged acts and practices resulted in violations of federal

13     and state law.

14             107.    Defendant's misrepresentations and other conduct, described herein, violated the

15     "unfair prong" of the UCL because the conduct is substantially injuries to consumers, offends

16     public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the

17     conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff

18     and members of the Class arising from Defendant's conduct outweighs the utility, if any, of those

19     practices.

20             108.    Defendant's practices as described herein are of no benefit to consumers, who are

21     tricked into believing that the Products are of a higher grade, quality, worth, and/or value than they

22     actually are.  Defendant's practice of injecting misinformation into the marketplace about the value

23     of its Products is unethical and unscrupulous, especially because consumers trust companies like

24     Defendant to provide accurate information about their Products.  Taking advantage of that trust,

25     Defendant misrepresents the value of its Products to increase its sales.  Consumers reasonably

26     believe that Defendant is an authority on the value of furniture and therefore reasonably believe

27     Defendant's representations that its Products are of a higher grade, quality, worth, and/or value

28     than they actually are.

109.    Defendant's conduct described herein violated the "fraudulent" prong of the UCL by representing that the Products were of a higher grade, quality, worth, and/or value, when in fact they were not.

110.    Plaintiff and members of the Class are not sophisticated experts with independent knowledge of the value of furniture, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

111.    Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

112.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Thus, Plaintiff and members of the Class are entitled to preliminary and injunctive relief.

## COUNT IV
### Fraud

113.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

114.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

115.    As discussed above, Defendant failed to disclose material facts about its sales practices, including that its "sale" prices were the normal prices at which the Products were typically sold, that its strikethrough prices and purported "discounts" were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

116.    These omissions made by Defendant, as described above, upon which Plaintiff and members of the Class reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class to purchase the Products.

117.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Unjust Enrichment**

118.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

119.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

120.    Plaintiff and members of the Class conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

121.    Defendant has knowledge of such benefits.

122.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are "on sale" and that consumers were receiving a "discount," and displaying a strikethrough reference price.  These misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

123.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Class, prays for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class Members;

(b)    An order declaring Defendant's conduct violates the statutes referenced herein;

(c)    Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its sales practices and to comply with consumer protection statutes;

(d)    Awarding monetary damages, including treble damages;

(e)     Awarding punitive damages;

(f)     Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated:  January 6, 2026                    **BURSOR & FISHER, P.A**.


By:  ____*/s/ Neal J. Deckant*____
                      Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorney for Plaintiff*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2    I, Neal J. Deckant, declare as follows:

3    1.    I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this

4    declaration to the best of my knowledge, information, and belief of the facts stated herein.

5    2.    The complaint filed in this action is filed in the proper place for trial because many

6    of the acts and transactions giving rise to this action are alleged to have occurred in this District,

7    and because Plaintiff alleges that she resides in this District.

8    3.    Plaintiff alleges that she is a citizen of California and resident of Napa, California.

9    4.    I declare under penalty of perjury under the laws of the United States and the State

10    of California that the foregoing is true and correct, executed on January 6, 2026, at Walnut Creek,

11    California.

12

13                                                */s/ Neal J. Deckant*
                                                Neal J. Deckant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28